ACCEPTED
03-14-00234-CR
5355071
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/20/2015 10:57:18 AM
JEFFREY D. KYLE
CLERK

No. 03-14-00234-CR
No. 03-14-00235-CR

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

5/20/2015 10:57:18 AM
JEFFREY D. KYLE
Clerk

In The Court Of Appeals for the Third District, Austin, Texas

Joe Derek Carr,
Appellant
vs.
The State Of Texas,
Appellee

Appeal from the 147th District Court of Travis County, Texas
Cause Numbers D-1-DC-11-100059 & D-1-DC-11-902003

## State's Brief

Rosemary Lehmberg
District Attorney
Travis County, Texas

Rosa Theofanis
Texas Bar No. 24037591
Assistant District Attorney
District Attorney's Office
P.O. Box 1748
Austin, Texas 78767
Phone: 512.854.9400
Fax: 512.854.4206
Email: Rosa.Theofanis@traviscountytx.gov
AppellateTCDA@ traviscountytx.gov

**Oral Argument Not Requested**

## Identity of Parties and Counsel

In accordance with Texas Rule of Appellate Procedure 38.2(a)(1)(A), the State supplements the Identity of Parties and Counsel set out in the appellant's brief as follows:

| | |
|---|---|
| Appellate Prosecutors | Ms. Rosemary Lehmberg<br>Travis County District Attorney<br>P.O. Box 1748<br>Austin, TX 78767 |
| | Rosa Theofanis<br>Assistant District Attorney<br>Travis County District Attorney<br>P.O. Box 1748<br>Austin, TX 78767 |

# Table of Contents

Identity of Parties and Counsel ................................................................. i

Index of Authorities ............................................................................. iii

Statement of the Case ............................................................................ 2

Statement Regarding Oral Argument ....................................................... 3

Statement of Facts ................................................................................ 3

Summary of the Argument ................................................................... 17

State's Reply to the Point of Error One ................................................ 21

The trial court did not abuse its discretion in allowing the State's witnesses to testify about the nature of the relationship between the appellant and Veronica Navarro because the statements were relevant evidence of the "previous relationship existing between the accused and the deceased" and, as statements showing Navarro's state of mind, did not violate the rule against hearsay. Alternatively, if it was error to permit the witnesses to testify about the relationship, it was harmless error. ................................................... 21

State's Reply to the Point of Error Two ............................................... 46

The evidence is sufficient to support the appellant's murder conviction as well as his conviction for tampering with evidence. ....................... 46

State's Reply to the Point of Error Three ............................................. 62

The trial court did not abuse its discretion in excluding evidence concerning Chris Kashimba's past contacts with law enforcement because, as specific instances of conduct that were not prior convictions, they were inadmissible as impeachment evidence. Alternatively, any error in excluding the testimony was harmless.... 62

State's Reply to the Point of Error Four ............................................... 72

The trial court did not abuse its discretion in allowing the admission of a phone call from the appellant to his mother recorded while he was in jail because it was properly authenticated by voice identification. Alternatively, any error in admitting the testimony was harmless. . 72

**State's Reply to the Point of Error Five**..................................................78

The trial court did not abuse its discretion in admitting State's Exhibit 318, the recorded phone call from the appellant to his mother from jail, because, as a recorded call voluntarily made to a non-State actor, the exhibit did not violate the appellant's right against self-incrimination.   Even if State's Exhibit 318 was admitted in error, it was harmless. ...............................................................................78

**State's Reply to the Point of Error Six**..................................................83

The trial court did not abuse its discretion in denying the appellant's motion for new trial because the newly-discovered evidence it was based upon merely showed that the appellant and Navarro were together prior to her death, did not contradict the evidence at trial, and would not have brought about a different result at trial. ............83

**Prayer** ..................................................................................87

**Certificate of Compliance**..................................................88

**Certificate of Service** ...........................................................88

# Index of Authorities

## Cases

*Angel v. State*, 627 S.W.2d 424 (Tex. Crim. App. 1982)..........................81

*Autry v. State*, 626 S.W.2d 758 (Tex. Crim. App. 1982).........................81

*Bagheri v. State*, 119 S.W.3d 755 (Tex.Crim.App. 2003) ..................68, 71

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)...................47, 61

*Cardenas v. State*, 115 S.W.3d 54 (Tex. App.—San Antonio 2003, no pet.) ................................................................................................31

*Chapman v. State*, 115 S.W.3d 1 (Tex. Crim. App. 2003) ......................80

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007) .....................60

*Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2010) .........................42

*Cordova v. State*, 698 S.W.2d 107 (Tex. Crim. App. 1985).....................48

*Delamora v. State*, 128 S.W.3d 344 (Tex. App.—Austin 2004, pet. ref'd) ...............................................................................................85, 87

*De La Paz v. State*, 279 S.W.3d 336 (Tex. Crim. App. 2009) ..................37

*Dorsey v. State*, 24 S.W.3d 921 (Tex. App.—Beaumont 2000, pet. ref'd35

*Duncan v. State*, 2013 Tex. App. LEXIS 3169, at *14 (Tex. App. — Dallas Mar. 22, 2013, no pet.)(mem. opinion not designated for publication).........................................................................................75

*Fain v. State*, 986 S.W.2d 666 (Tex. App—Austin 1998, pet. ref'd) 29, 33, 35, 36

*Ford v. State*, 919 S.W.2d 107 (Tex. Crim. App. 1996)...........................25

*Garcia v. State*, 201 S.W.3d 695 (Tex. Crim. App. 2006) ..................27, 28

*Garcia v. State*, 246 S.W.3d 121 (Tex. App—San Antonio 2007, pet. ref'd)...............................................................................................31

*Gonzalez v. State*, 195 S.W.3d 114 (Tex. Crim. App. 2006) 36, 37, 38, 39, 40

*Graham v. State*, 566 S.W.2d 941 (Tex. Crim. App. 1978).....................55

*Guevara v. State*, 152 S.W.3d 45 (Tex. Crim. App. 2004) ..........49, 52, 58

*Hacker v. State*, 389 S.W.3d 8601 (Tex. Crim. App. 2013..........49, 51, 58

*Hankins v. State*, 132 S.W.3d 380 (Tex. Crim. App. 2004) ....................24

*Hankins v. State*, 180 S.W.3d 177 (Tex. App.—Austin 2005, pet. ref'd) ...............................................................................................76, 81

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) ............, 48, 49, 61

*Houston v. State*, 185 S.W.3d 917 (Tex. App. .—Austin 2006, pet. ref'd.) ............................................................................................................42

*Jackson v. Virginia*, 443 U.S. 307 (1979) .................................... 47, 56, 61

*Jessop v. State*, 368 S.W.3d 653 (Tex. App.—Austin 2012, no pet.) ......37

*Johnson v. State*, 611 S.W.2d 649 (Tex. Crim. App. 1981).....................80

*Keeter v. State*, 74 S.W.3d 31 (Tex. Crim. App. 2002) ...........................85

*Lawton v. State*, 913 S.W.2d 542 (Tex. Crim. App. 1995), cert. denied, 519 U.S. 826 (1996) ...........................................................................36

*Ladd v. State*, 3 S.W.3d 547 (Tex. Crim. App. 1999).......................42, 46

*Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998) .......................42

*Losada v. State*, 721 S.W.2d 305 (Tex. Crim. App. 1986).......................80

*Martinez v. State*, 17 S.W.3d 677 (Tex. Crim. App. 2000) ............ *passim*

*Martinez v. State*, 186 S.W.3d 59 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).....................................................................................33

*Mayes v. State*, 816 S.W.2d 79 (Tex. Crim. App. 1991).........................44

*Minnesota v. Murphy*, 465 U.S. 420 (1984) ...........................................80

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990) (op. on reh'g) .............................................................................. 22, 72, 78

*Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002) .......................77

*Norton v. State*, 771 S.W.2d 160 (Tex. App. .—Texarkana 1989, pet. ref'd).................................................................................................34

*Pena v. State*, 864 S.W.2d 147 (Tex. App. .— Waco 1993, no pet.) ........34

*Phillips v. State*, 436 S.W.3d 333 (Tex. App.—Waco 2014, pet. granted) ...........................................................................................74, 75

*Powell v. State*, 63 S.W.3d 435 (Tex. Crim. App. 2001) ....... 21, 62, 72, 78

*Resendez v. State*, 306 S.W.3d 308 (Tex. Crim. App. 2009)...................25

*Reynolds v. United States*, 98 U.S. 145 (1879).....................................38

*Russo v. State*, 228 S.W.3d 779 (Tex. App.—Austin 2007, pet. ref'd)....34

*Salazar v. State*, 127 S.W.3d 355 (Tex. App—Houston [14th Dist.] 2004, pet ref'd)............................................................................................30

*Salazar v. State*, 38 S.W.3d 141 (Tex. Crim. App. 2001)..................83, 87

*Saldivar v. State*, 980 S.W.2d 475 (Tex. App. —Houston [14th Dist.] 1998, pet. ref'd)..................................................................................34

*Sattiewhite v. State*, 786 S.W.2d 271 (Tex. Crim. App. 1989) ...............25

*Schoff v. State*, 2010 Tex. App. LEXIS 1350 (Tex. App.—Austin Feb. 23, 2010, no pet.) (mem. op., not designated for publication) ...................67

*Shafer v. State*, 82 S.W.3d 553 (Tex. App.—San Antonio 2002, pet. ref'd) ..................................................................................................85
*Stobaugh v. State*, 421 S.W.3d 787 (Tex. App. Fort Worth 2014).......... 56
*Temple v. State*, 390 S.W.3d 341 (Tex. Crim. App. 2013) ...................... 48
*Thrailkille v. State*, 2002 Tex. App. LEXIS 8972 (Tex. App.—Beaumont Dec. 18, 2002)( opinion not designated for publication) ...................... 35
*Vann v. State*, 853 S.W.2d 243 (Tex. App. —Corpus Christi 1993, pet. ref'd).............................................................................................. 36
*Wallace v. State*, 106 S.W.3d 103 (Tex. Crim. App. 2003) ..................... 85

## Statutes & Constitutions

TEX. CODE CRIM. PROC. art. 38.08 ........................................................80
TEX. CODE CRIM. PROC. art. 38.36 ................................................. 27, 31
TEX. CODE CRIM. PROC art. 38.49 .............................................. 38, 39, 41
TEX. PENAL CODE § 19.02..................................................................... 61
TEX. PENAL CODE § 37.09..................................................................... 61
TEX. R. APP. PROC. 33.1....................................................................... 24
TEX. R. APP. PROC. 38.1....................................................................... 24
TEX. R. APP. P. 44.2.................................................................. 42, 68, 76
TEX. R. EVID. 608 ............................................................................... 63
TEX. R. EVID. 611 ............................................................................... 63
TEX. R. EVID. 801 ............................................................................... 32
TEX. R. EVID. 803 .......................................................................... 28, 33
TEX. R. EVID. 901 ................................................................. 73, 74, 75, 76
U.S. CONST. AMEND. V..........................................................................80

No. 03-14-00234-CR
No. 03-14-00235-CR

In the Court Of Appeals Third District
Austin, Texas

Joe Derek Carr,
Appellant

vs.

The State of Texas,
Appellee

Appeal from the 147th District Court
Travis County, Texas
Cause Numbers D-1-DC-11-100059 & D-1-DC-11-902003

State's Brief

To the Honorable Court of Appeals:

The State of Texas, by and through the District Attorney for Travis County, respectfully submits this brief in response to that of the appellant.

1

## Statement of the Case

The appellant, Joe Derek Carr, was indicted for murder and tampering with physical evidence, a human corpse. (D-1-DC-11-902003: CR 6)( D-1-DC-11-100059: CR 14.) The appellant pled not guilty and was tried by a jury. (3 RR 16) The jury found him guilty as charged. (8 RR 90) The appellant elected to go to the court for punishment; the court assessed a sentence of sixty years for murder and twenty years for tampering with evidence. (9 RR 110.) The appellant filed a motion for new trial, which was denied by the trial court. (10 RR 26.) The appellant filed notice of appeal (D-1-DC-11-902003:CR 128)( D-1-DC-11-100059: CR 143) and the trial court certified his right to appeal. (D-1-DC-11-902003:CR 104)( D-1-DC-11-100059: CR 119.)

## Statement Regarding Oral Argument

Because the issues, facts, legal authorities, and arguments pertinent to the instant appeal are adequately addressed in the briefs submitted by the parties, the State respectfully asserts that the Court's decisional process would not be significantly aided by oral arguments. Accordingly, the State does not request oral argument.

## Statement of Facts

On the morning of July 6, 2011, Jack Cudeyro was out on Lake Travis with a colleague testing a new propeller on his boat when he saw what he thought was a tarp or a tent in the water. 3 RR 173- 175. As the men got closer, it looked like something was inside of it. 3 RR 176. Cudeyro touched the package and "it felt like a shoulder." 3 RR 177. He moved his arm down and felt something that felt like a forearm muscle. 3 RR 177. Cudeyro

testified "At that moment, I knew something was in there that didn't need to be in there." 3 RR 177. The men took a small pocket knife and made a small cut in the material, opened it with their fingers and saw flesh. 3 RR 178.

Travis County Park Police responded to the scene. 3 RR 182-183. 3 RR 191. The body was found along the shoreline of Pace Bend Park in an area of the park that was largely abandoned and had overgrown roads. 3 RR 191. 3 RR 197. One officer described that "looking at the tent, you could almost make out, you know, it was a person lying facedown. You [could] see the elbows kind of protruding up, her bottom sticking up in the air, the legs bent back." 3 RR 202. By the odor, it was apparent that victim "had been out there awhile." 3 RR 202. It was also obvious that the body was either anchored or tied or stuck to something that was under the water. 3 RR 202.

In fact, the body had been bound with a rope and there was a rope around the victim's neck that was attached to cinder blocks and paint cans.  3 RR 235.  The body was wrapped in a Coleman tent.  3 RR 176.  3 RR 203.  3 RR 248.  Inside, the victim was wearing an oversized black high-waisted skirt with no underwear and a medium-sized gray long-sleeved shirt.  3 RR 244. 3 RR 246-247.  Also inside the tent there was also a black trash bag.  3 RR 255.   The victim was identified as Veronica Navarro.  4 RR 137.

Navarro, a 22 year old native of Laredo, was the second-oldest in a family of six children.  3 RR 32-34.   When she graduated high school and "became independent," Navarro moved to Austin, a place she knew well from spending summers with her aunt and cousin Anna Karen growing up.  3 RR 34.  After moving, when she was are 18 or 19 years old, Navarro began a romance with Chris Kashimba, a childhood friend and an across-the-street

neighbor of her aunt.  3 RR 35. The relationship was on-and-off and, according to Navarro's sister, the two would frequently disagree and argue about money because "sometimes he would just not work and she was always working."  3 RR 35.  3 RR 43.

During an "off" period with Kashimba, Navarro had begun dating the appellant, an employee of the Pedernales Fire Department.  3 RR 36.  4 RR 138-139.  After this, Navarro had resumed her relationship with Kashimba, but about a month prior to her death, Navarro and Kashimba had broken things off again and she had resumed a relationship with the appellant.  3 RR 36-37.  At the time of her death, the appellant was Navarro's boyfriend.  4 RR 138-139.

Navarro had moved in with the appellant to a house in a very "rural," "secluded" area in Spicewood, Texas approximately three miles from Highway 71 West in Burnet County.  4 RR 272.

3 RR 38. 5 RR 23.  Nonetheless, for the month following their break-up, Navarro and Kashimba continued to communicate in secret, and Kashimba anticipated that they would reunite.  3 RR 99.  Although the appellant had bought Navarro a car, he also acted jealous and Navarro "was upset" because the appellant "would never let her do anything and would never let her go anywhere."  3 RR 51-52.  3 RR 56.  Navarro confided to her cousin, Anna Karen Perez, that the appellant "wasn't what she expected." 3 RR 155.

On Friday, June 24th, 2011, Navarro's cousins from Laredo were going to be in town and made plans to go out to eat, but Navarro wasn't able to join them.  3 RR 158-159.  Instead, she went to a barbecue at a friend's house with the appellant and his young son, where Navarro seemed "unhappy" and where the appellant, who was drinking, "was definitely not being very nice to

her," to the point that his friend confronted him about the way he was treating Navarro. 3 RR 60-65.

Navarro's family also had plans to go out to dinner and dancing on Saturday, June 25th, but Navarro said she could not join them because the appellant "had to leave." 3 RR 158.

The following day, Sunday, June 26th, 2011, Navarro also failed to "swing by" and see her cousins before they departed for Laredo on Sunday afternoon. 3 RR 161-162. That day, Navarro exchanged about 30 phone calls text messages with Chris Kashimba and roughly 6 phone calls or text messages with the appellant.[1] 6 RR 68. 6 RR 70.

On Monday, June 27th, 2011, Navarro interviewed for a job with Carousel Pediatrics as a medical assistant. 3 RR 70-72. At

---

[1] Throughout this statement, the State assumes that Navarro is the user of Navarro's phone, Kashimba is the user of Kashimba's phone and the appellant is the user of the appellant's phone.

8

her interview, Navarro said she was willing to work weekends and was interested in work at the office's "Springdale location," in East Austin. 3 RR 76. Kashimba saw Navarro following her job interview. 3 RR 101. Navarro cried, said she loved Kashimba and that she wanted to break up with the appellant. 3 RR 102. Upon their parting, Kashimba anticipated that Navarro was going to go home, break up with the defendant and reunite with him. 3 RR 102. After Navarro's departure, Kashimba called her around 7 pm "and she said that she was on her way and she was going to be there and that everything was okay." 3 RR 104-105.

Shortly after that, the appellant called Navarro three times from his house.[2] 6 RR 42-43 At 8:11 Navarro made a call to the appellant that showed her location as being near US Highway 71.

---

[2] The call was serviced from the cell tower nearest his home. Hereinafter, calls serviced by the cell tower nearest to the appellant's house will be treated as calls originating "from" his home.

9

6 RR 43.  5 RR 130.  The call lasted 1 minute, 32 seconds and was the last time that Navarro answered her phone or made a call or sent a text from her phone.  6 RR 43.  5 RR 127.   5 RR 124.  6 RR 27.

At 8:24 p.m., the appellant made a ten second call to Navarro.  6 RR 43-44.   Then, for the next two hours, the appellant's phone went silent.   6 RR 44.   At 10:32 p.m. the appellant made a call from his house to a Lowe's store located in Austin Texas.  6 RR 44-45.  Fifteen minutes later, the appellant called Spicewood General Store.  6 RR 45.  At 11:41 p.m., the appellant's phone called the Pedernales Fire Department twice within a minute, but with a duration of zero seconds.  6 RR 45-46.  That was the last call of the night originating from the appellant's cell phone.  6 RR 47.

The next morning, on Tuesday, June 28th, the appellant had a shift at work at 9:00 a.m. 4 RR 25. On the job, the appellant was normally very "upbeat," talkative and cheery. 4 RR 67. However, that morning, when the truck went out on call, the appellant was acting out of character, providing none of the usual assistance and participation that he would usually provide as engineer on the fire truck. 4 RR 18-22. 4 RR 64- 66. Back at the station, the appellant was "quiet" and "standoffish," walking over and curling up in a recliner with his hat over his head. 4 RR 22. 4 RR 66. Then, around 7 p.m., he asked to leave early because he was not feeling well. 4 RR 22-23. 4 RR 26. In fact, the appellant insisted upon leaving before reinforcements could arrive, causing the firetruck to go out of service for about 45 minutes. 4 RR 23-24. That day, Chris Kashimba made ten phone calls or text messages phone to Veronica's phone but zero were received. 6 RR 68. The

11

appellant made no attempts to exchange phone calls or text messages with Navarro. 6 RR 70.

On June 29th, 2011, between 1:15 a.m. to 2:30 a.m. in the morning, the appellant's cell phone data records were consistent with someone driving down Highway 71, going out to Pace Bend Park to the location where Navarro's body was recovered, and then going back. 6 RR 124. 6 RR 109-119.

On Thursday, June 30th, the appellant's cell phone records showed him departing his home in Spicewood and traveling south all the way down into the Rio Grande Valley. 6 RR 52-54.

The appellant was scheduled to come to work on Friday, July 1st at 9:00 but did not show up. 4 RR 26-27. By that time, the appellant's cell activity was being serviced by a cell site located on South Padre Island. 6 RR 54. By mid-morning, the appellant's morning cell activity was being serviced by a cell site located just

east of Brownsville, just a couple of miles from the border of Mexico and Texas.  6 RR 54.  Later, the appellant told his lieutenant that he hadn't come to work that day because "his girlfriend and he had split up and he didn't want to leave the house fearing that she was going to demolish -- or just tear up stuff in the house."  4 RR 32-33.

On Saturday, July 2nd, the appellant's cell activity was being serviced by cell sites located near Port Isabel and on South Padre Island.  6 RR 55.

On Sunday, July 3rd of 2011, the appellant's midmorning cell activity was being serviced by cell sites located near Harlingen.  6 RR 55.  Then, the appellant's cell activity indicated that he was traveling northward, and by that afternoon, the appellant's cell activity was being serviced by cell sites located near Spicewood, Texas, again.  6 RR 55-56.  Throughout the rest of

that late afternoon into the evening hours, the appellant's cell activity indicated a lot of movement ranging from West Austin to South Austin and further west near Bee Cave, as far as Johnson City, where relatives of the appellant lived , to cell sites just south of the defendant's house and near the fire department. 6 RR 56-58.

On Monday, July 4th, at 9:00 am, the appellant was scheduled to work again and came to work. 4 RR 31-32. The appellant performed as normal at work that day: "eager, energetic, get[ting] things done around the station." 4 RR 34.

The appellant stayed on duty for the following shift on July 5th because he had "worked a trade" with another firefighter. 4 RR 35. That day, the appellant was playing a game on his phone and "just kind of rambunctious about that all day." 4 RR 99. The

14

appellant's second shift ended at 9:00 a.m. on the morning of July 6th.  4 RR 36

After the appellant got off work on July 6th, he went to an outdoor music event where he ran into an acquaintance, Sarah Hansen, a convenience store clerk who worked near the fire station.  7 RR 15-16.  Hansen invited him to sit with her group for the concert and ended up leaving the concert with him and going to his house in Spicewood that night.  7 RR 16-19.  Although the appellant seemed "spacey" and "flighty," she stayed the night and the two had intercourse.  7 RR 19-24.  On, Thursday, July 7th, around 9 or 10 a.m., the appellant drove Hansen to a friend's house.  7 RR 25-26.  The last time there was any cell site information for the appellant's phone was at 9:35 a.m., on July 7th of 2011.  6 RR 62.

15

Stormy Davis, with the Pedernales Fire Department, was notified about the identification of Navarro on Friday, July 8th, in the afternoon or early evening. 4 RR 102-103. 4 RR 140-141. The following morning, on Saturday, July 9th, a Canadian border crossing employee called the fire station seeking to verify employment information for the appellant. 4 RR 103-104. Davis called the Travis County Sheriff's Office to let them know about the call from border crossing. 4 RR 103-105.

The appellant had aroused the suspicions of Canada Border Services Agency officer Prosper Kuwonu by trying to enter Canada with the claim that he was making a trip for four weeks without a credit card or a debit card, just $2000.00 cash. 7 RR 31-45. Kuwonu returned the appellant to the U.S. side of the border after being informed that that the appellant was a suspect in a murder investigation. 7 RR 30-45. An arrest affidavit was made

for the appellant on the charge of tampering with evidence. 4 RR 219. 4 RR 221. 4 RR 227. The appellant was released to Pembina County authorities and held in the Pembina County Jail for approximately 11 days. 7 RR 59. 7 RR 67.

During the time he was detained, the appellant called his mother seeking her assistance to be released from jail. State's Exhibit 318. In that call, the appellant's mother asked him "Joe Derek, did you kill Veronica?," "Tell me, did you hurt her, yes, or no?" and "But, you didn't do anything wrong?," but the appellant responded with evasions. *Id.*

## Summary of the Argument

1.  The court did not abuse its discretion in allowing the State's witnesses to testify regarding Veronica Navarro's characterization of her relationship with the appellant. The statements the appellant complains of were relevant as evidence of the "previous relationship existing between the accused and the deceased" and did not violate the rule against hearsay because they were statements

17

showing Navarro's state of mind. Furthermore, the appellant forfeited his right to object to their admissibility through "forfeiture by wrongdoing." Any argument that the statements fell afoul of Texas Rules of Evidence 403 or 404(b) was forfeited as well because it wasn't raised at trial. Regardless, even if the statements were admitted in error, the error was harmless because the same evidence was introduced without objection in other forms and the evidence did not have a substantial effect in determining the jury's verdict.

2. The cumulative force of all the incriminating circumstances were sufficient for a rational trier of fact to find that the appellant intentionally or knowingly caused the death of Veronica Navarro, and, knowing that an investigation of Navarro's death was pending, he altered, destroyed, or concealed her corpse with intent to impair its availability as evidence in the investigation. The evidence at trial proved that the appellant had the motive and opportunity to kill Navarro and that the appellant had tried to conceal Navarro's death. The evidence included physical evidence found with Navarro's body, autopsy results concluding she died by homicide, cell phone evidence tracing the appellant to the location where her body was dumped and testimonial evidence recounting the incriminating acts, words, and the conduct of the appellant surrounding the crime, including his attempt to escape to Canada after Navarro's body was

discovered. The evidence was sufficient to support the conviction on both charges.

3. The trial court did not abuse its discretion in excluding evidence concerning Chris Kashimba's past contacts with law enforcement because, as specific instances of conduct that were not prior convictions, they were inadmissible as impeachment evidence. The appellant argues that specific instances of conduct should nonetheless have been admissible to disprove Kashimba's testimony that he and Navarro "never fought," which he characterizes as a misrepresentation. However, in context, Kashimba's statement that he and Navarro "never fought" meant that they never *physically* fought. Thus, the specific incidences the appellant sought to admit, containing no physical violence, did not contradict Kashimba's testimony and were ultimately inadmissible. Alternatively, even if the evidence should have been allowed, its exclusion was harmless.

4. State's Exhibit 318, a telephone call between the appellant and his mother that was recorded while he was being held at the Pembina County jail, was properly authenticated. Since the voices on the recording were identified by witnesses at trial, the phone call was properly authenticated by voice identification and it was not an abuse of discretion to admit it. Contrary to the appellant's claim, telephone calls do not have to be authenticated "by the number assigned at the time." So

19

long as the evidence is sufficient to support a finding that the matter in question is what its proponent claims,"[t]he requirement of authentication or identification as a condition precedent to admissibility" has been satisfied. Texas Rule of Evidence 901 also does not require that evidence be authenticated by more than one sufficient means. Alternatively, if the court erred in permitting it into evidence, the error was harmless.

5.    The admission of State's Exhibit 318 also did not violate the appellant's right against self-incrimination. The content of State's Exhibit 318 is not equivalent to a prosecutor's comment on a defendant's failure to testify at trial. Because the recorded exchange was voluntarily made, out-of-court, and did not involve a State actor, the Fifth Amendment rights the appellant claims were not implicated and the court did not abuse its discretion in admitting the evidence. Alternatively, if admission of the exhibit was an error, it was harmless.

6.    The trial court did not abuse its discretion in denying the appellant's motion for new trial. The newly-discovered evidence that formed the basis of the motion was a surveillance video that proved the appellant and Navarro were shopping together on June 26, 2011, which was consistent with the evidence at trial. Even though the State's theory was that their relationship was strained, it was undisputed that the appellant and Navarro were "together" on that date. Based on this, the appellant

20

failed to establish that the evidence would "probably bring about a different result," an essential requirement for a new trial based on newly discovered evidence, and thus the trial court did not commit an abuse of discretion in overruling the motion for new trial.

### State's Reply to the Point of Error One

The trial court did not abuse its discretion in allowing the State's witnesses to testify about the nature of the relationship between the appellant and Veronica Navarro because the statements were relevant evidence of the "previous relationship existing between the accused and the deceased" and, as statements showing Navarro's state of mind, did not violate the rule against hearsay. Alternatively, if it was error to permit the witnesses to testify about the relationship, it was harmless error.

### Standard of Review

A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). A trial court does not abuse

its discretion as long as its decision to admit or exclude evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

## Argument and Authorities

The appellant argues that the trial court abused its discretion in allowing hearsay testimony of the appellant's alleged bad character in violation of Texas Rules of Evidence 403, 404(b) and 802. But the statements the appellant complains of were admissible as evidence of the relationship between the appellant and Veronica Navarro and did not violate the rule against hearsay because they were statements showing Navarro's state of mind. Furthermore, the appellant forfeited his right to object to their admissibility through

"forfeiture by wrongdoing." Any argument that the statements fell afoul of Texas Rules of Evidence 403 or 404(b) was forfeited as well because it wasn't raised at trial. Regardless, even if the statements were admitted in error, the error was harmless because the same evidence was introduced without objection in other forms and the evidence did not have a substantial effect in determining the jury's verdict.

## Preservation of Error

The appellant complains of different portions of testimony being admitted in violation of Texas Rules of Evidence 403, 404(b) and 802 and states that error was preserved by a running objection at trial. Appellant's Brief, Nos. 03-14-00234-CR & 03-14-00235-CR at 10, 11, *citing* 3 RR 50; 3 RR 93. To the extent that the appellant objected and

23

obtained running objections, the objections were to hearsay only. *See* 3 RR 50. 3 RR 93. 3 RR 154. For this reason, any complaint regarding admission of evidence in violation of Texas Rules of Evidence 403 or 404(b) has been forfeited. TEX. R. APP. PROC. 33.1(a)(2); *Martinez v. State*, 17 S.W.3d 677, 686 (Tex. Crim. App. 2000).

Additionally, because the appellant's briefs make no argument in support of his conclusory allegation of Rule 403 and 404(b) violations, the claims should be overruled. *See* TEX. R. APP. PROC. 38.1. (The parties must present "clear and concise argument for the contentions made, with appropriate citations to authorities and the record."); *Hankins v. State*, 132 S.W.3d 380, 385 (Tex. Crim. App. 2004) ("Because the appellant does not provide any argument or authority in support of this contention, it is inadequately briefed").

Furthermore, even the hearsay objection was preserved only if "the running objection constituted a timely objection, stating the specific grounds for the ruling." *Ford v. State*, 919 S.W.2d 107, 113 (Tex. Crim. App. 1996) *quoting Sattiewhite v. State*, 786 S.W.2d 271, 284-85 n. 4. (Tex. Crim. App. 1989). An "advocate who lodges a running objection should take pains to make sure it does not encompass too broad a reach of subject matter over too broad a time […]." *Sattiewhite v. State*, 786 S.W.2d 271, 283, n. 4 (Tex. Crim. App. 1989). Because counsel did not delineate the exact nature, grounds and extent of his running objection, and did not object to statements on a case-by-case basis, the trial judge was not given the opportunity to rule on the statements that the appellant complains of on appeal with any particularity. *See Resendez v. State*, 306 S.W.3d 308, 312-313 (Tex. Crim. App. 2009)(" The parties, not

the judge, are responsible for the correct application of evidentiary rules; in order to preserve a complaint for appeal, the complaining party must have done everything necessary to bring the relevant evidentiary rule and its precise and proper application to the trial court's attention.")

### *Admissibility under Rule 803(3)*

The appellant argues that the trial court abused its discretion in allowing into evidence multiple statements that he claims violated the rule against hearsay. Appellant's Brief, Nos. 03-14-00234-CR & 03-14-00235-CR at 10-11. Taking each instance of complained of testimony in turn, even assuming proper preservation, the trial court did not abuse its discretion in allowing the enumerated testimony to come into evidence because it either was not hearsay or fell under the Rule 803(3)

hearsay exception because it indicated the victim's state of mind.

"In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." TEX. CODE CRIM. PROC. art. 38.36(a). This evidence includes evidence regarding the romantic relationship between the victim and the accused, including whether their relationship was strained or ending. *Garcia v. State*, 201 S.W.3d 695, 702-703 (Tex. Crim. App. 2006). "[I] n some situations, prior acts of violence between the victim and the accused may be offered to illustrate the nature of the

relationship." *Garcia v. State*, 201 S.W.3d at 702-703.

Nonetheless, "these specific acts of violence must meet the requirements of the Rules of Evidence in order to be admissible." *Id.* at 702.

Rule 803(3) of the Rules of Evidence excepts from the hearsay rule "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." TEX. EVID. R. 803. A victim's expression of fear of the accused, as a statement of the declarant's then existing state of mind, falls within the Rule 803(3) hearsay exception. *Martinez v. State*, 17 S.W.3d 677, 689 (Tex. Crim.

App. 2000).  Evidence regarding a victim's intent to continue in a relationship has also been ruled admissible under the Rule 803(3) hearsay exception as showing the victim's state of mind. *Fain v. State*, 986 S.W.2d 666, 680 (Tex. App—Austin 1998, pet. ref'd).

First, the appellant asserts that the court abused its discretion in allowing Manuela Navarro to testify that Veronica Navarro "was upset because she said that [the appellant] would never let her do anything and would never let her go anywhere."  3 RR 56.   Navarro said this during a conversation about why she could not get together with her family who were in from Laredo for the weekend.  3 RR 55-56. The statement was a hyperbolic one that was not intended to be taken literally for the matter asserted, that she could "never" go anywhere, but to be understood as a statement that

29

she felt controlled. As such, it was a statement of her emotion and her mental feelings of being upset, stuck and frustrated at the time she expressed them. Statements concerning the declarant's then existing emotional condition or mental feeling are admissible under Rule 803(3). *Martinez v. State*, 17 S.W.3d at 689 (Tex. Crim. App. 2000) (holding declarant's statement she was afraid fit exception in 803(3)); *Salazar v. State*, 127 S.W.3d 355 (Tex. App—Houston [14th Dist.] 2004, pet ref'd)(holding victim's feelings of sadness, fear, embarrassment, nervousness, worry and anger were admissible under exception in 803(3) because they concerned the declarant's then existing emotional condition or mental feeling). Navarro's statement was properly admitted because it both expressed her state of mind and showed the "previous

relationship existing between the accused and the deceased." TEX. CODE CRIM. PROC. art. 38.36(a).

Kashimba's testimony that Navarro was "afraid" of the defendant and that she "didn't like his attitude" (3 RR 93) also fell squarely within the 803(3) exception as "a victim's statement regarding her emotional response to a particular person." *Garcia v. State*, 246 S.W.3d 121, 132 (Tex. App—San Antonio 2007, pet. ref'd), *citing Cardenas v. State,* 115 S.W.3d 54, 63 (Tex. App.—San Antonio 2003, no pet.); *and Martinez,* 17 S.W.3d at 688.

Kashimba's testimony that Navarro said the appellant would "scream or throw things, throwed little fits, temper tantrums," and that he "drank a lot" and became more aggressive" was likewise admissible.  3 RR 94-95.  A statement

31

is hearsay only if offered in evidence "to prove the truth of the matter asserted." TEX. R. EVID. 801(d). In this instance, Kashimba's testimony concerning the appellant's fits and behavior when drinking was offered to show Navarro's state of fear within the relationship, her motivation in breaking up with the appellant, and her intent in leaving the relationship with the appellant; therefore, it was not hearsay offered for the truth of the matter asserted. Kashimba's statement that "I would see bruises," was also not hearsay, but his own observation. 3 RR 94. However, even if the testimony had been hearsay, it would fall under the exception for "[a] statement of the declarant's then existing state of mind [or] emotion" because Kashimba's testimony ultimately concerned Navarro's state of mind about her relationship with the appellant and her fear of him. TEX. R. EVID. 803(3).

The court also did not abuse its discretion in allowing Kashimba to testify that Navarro said she planned to get a job and break up with the appellant because these statements expressed her future plans and intent. 3 RR 102. "Hearsay statements relating to the declarant's existing state of mind-- such as mental feelings or intent--are generally admissible when that conduct is relevant to some aspect of the case." *Martinez v. State*, 186 S.W.3d 59, 67 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd), (holding that testimony that indicated complainant's intentions of leaving appellant were admissible under Rule of Evidence 803(3), *citing* TEX. R. EVID. 803(3); *Martinez v. State*, 17 S.W.3d 677, 688 (Tex. Crim. App. 2000).) *See also, Fain v. State*, 986 S.W.2d 666, 680 (Tex. App.— Austin 1998, pet. ref'd), (victim's statement to a third party that she was frustrated in the relationship, but intended to

continue the relationship with the defendant admissible under Rule 803(3)); *Russo v. State*, 228 S.W.3d 779, 809-810 (Tex. App.—Austin 2007, pet. ref'd), *citing Saldivar v. State*, 980 S.W.2d 475, 495 (Tex. App. —Houston [14th Dist.] 1998, pet. ref'd) ("finding under Rule 803(3) that the trial court did not err in admitting into evidence the murder victim's prior statement that she was going to fire defendant, an employee"); *Pena v. State*, 864 S.W.2d 147, 149- 150 (Tex. App.--Waco 1993, no pet.) ("upholding admission under Rule 803(3) of murder victim's statement that she wanted to leave defendant, but felt economically trapped"); *Norton v. State*, 771 S.W.2d 160, 165-66 (Tex. App.--Texarkana 1989, pet. ref'd) ("finding no abuse of discretion in admission of prior statement by murder victim that he intended to go to defendant's shop"). The testimony of Anna Karen Perez that Navarro said that her

relationship was not what she expected and that she had

concerns about moving in with the appellant (3 RR 155-156)

was admissible by the same principle: it expressed her existing

state of mind. *Fain v. State*, 986 S.W.at 679-680. *See*

*Thrailkille v. State*, 2002 Tex. App. LEXIS 8972 (Tex. App.—

Beaumont Dec. 18, 2002)( opinion not designated for

publication)(holding declarant's statement to ex-boyfriend that

her relationship with the defendant was over was

admissible)("Under Rule 803(3) of the Rules of Evidence,

statements of the intent of the declarant with regard to

relations have been held to be admissible as showing future

intent, and also admissible to demonstrate state of mind.") and

*citing Dorsey v. State*, 24 S.W.3d 921, 928 (Tex. App.—

Beaumont 2000, pet. ref'd), ("testimony that victim not getting

along with husband/defendant, and victim had been seeking

divorce"); *Vann v. State*, 853 S.W.2d 243, 250 (Tex. App. —

Corpus Christi 1993, pet. ref'd)("testimony that the victim

stated that he was not happy in his marriage and wanted to

find a way out was admissible as a statement of emotional

state and intent to act").

"The admissibility of an out-of-court statement under an

exception to the general hearsay exclusion rule is within the

trial court's discretion." *Fain v. State*, 986 S.W.2d at 680,

*citing Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App.

1995), *cert. denied*, 519 U.S. 826 (1996). The trial court did not

abuse its discretion in admitting the evidence the appellant

now contests as admissible under Rule 803(3).

*Forfeiture by Wrongdoing*

"An evidentiary ruling, such as the one admitting […] out-of-court statements, will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006). *Jessop v. State*, 368 S.W.3d 653, 686 (Tex. App.—Austin 2012, no pet.), *citing De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); ("[A] trial court's evidentiary ruling must be upheld if it is correct under any theory of law that is reasonably supported by the record, even if the trial judge gave the wrong reason for the ruling.") All of the hearsay statements by Veronica Navarro that the appellant now complains of were admissible because the appellant forfeited his right to object to their admissibility through "forfeiture by wrongdoing."

"The doctrine of forfeiture by wrongdoing has been a part of the common law since at least 1666." *Gonzalez v. State*, 195 S.W.3d 114, 117 (Tex. Crim. App. 2006), *citing Reynolds v. United States*, 98 U.S. 145, 158 (1879). "The doctrine is based on the principle that 'any tampering with a witness should once for all estop the tamperer from making any objection based on the results of his own chicanery.'" *Gonzalez v. State*, 195 S.W.3d at 117. In 2013, "Forfeiture by Wrongdoing" was codified in the Texas Code of Criminal Procedure as an evidentiary exception. TEX. CODE CRIM. PROC. art 38.49. Under that statute, "A party to a criminal case who wrongfully procures the unavailability of a witness or prospective witness (1) may not benefit from the wrongdoing by depriving the trier of fact of relevant evidence and testimony; and (2) forfeits the party's right to object to the admissibility of evidence or

statements based on the unavailability of the witness as provided by this article through forfeiture by wrongdoing." TEX. CODE CRIM. PROC. art 38.49.

Texas Code of Criminal Procedure art 38.49 applies only to an offense committed on or after the effective date of the act that enacted it, September 1, 2013. TEX. CODE CRIM. PROC. art. 38.49. However, the doctrine existed before its codification and, in *Gonzalez v. State*, the Texas Court of Criminal Appeals applied the doctrine in the context of Confrontation Clause objections. *Gonzalez v. State*, 195 S.W.3d 114, 119 (Tex. Crim. App. 2006). The Court's rationale and analysis in that case suggest that the doctrine applied to hearsay objections as well. *See Gonzalez v. State*, 195 S.W.3d at 119 ("While courts have widely accepted the doctrine of forfeiture by wrongdoing to

reject both hearsay objections and confrontation claims, the test for determining whether there is a forfeiture has varied.")

In this case, the record supports a finding of forfeiture by wrongdoing according to the law at the time the offense was committed in that (1) the declarant was unavailable, (2) as a result of the defendant's act of misconduct. *Gonzalez v. State*, 195 S.W.3d at 119. The doctrine of forfeiture by wrongdoing is applicable "even though the act with which the accused is charged is the same as the one by which he allegedly rendered the witness unavailable." *Id.* at 125. Furthermore, although, in *Gonzales*, the Court of Criminal Appeals declined to reach the question of whether forfeiture by wrongdoing requires that the "accused specifically intends that the witness be made unavailable when he engages in the wrongful conduct," given the current statute's disavowal of a requirement that the

offering party show that "the actor's sole intent was to wrongfully cause the witness's or prospective witness's unavailability," that requirement should not be applied to the appellant's action in this case. *See Id.*; TEX. CODE CRIM. PROC. art. 38.49(d). Because the appellant "wrongfully procured the unavailability" of Navarro by killing her, he forfeited his right to object to her out-of-court statements coming into evidence.

Based on both of the theories above, the trial court did not abuse its discretion in allowing Navarro's out-of-court statements concerning her prior relationship with the appellant into evidence.

## Harmless Error

Assuming, *arguendo*, that the court erred in allowing the jury to hear the testimony, a trial court's failure to properly

enforce evidentiary rules is non-constitutional error and will be disregarded unless it affected the appellant's substantial rights. TEX. R. APP. P. 44.2(b). The court need not reverse if, after examining the record as a whole, it has "fair assurance that the error did not influence the jury's deliberations to appellant's detriment or had but a slight effect." *Ladd v. State*, 3 S.W.3d 547, 566 (Tex. Crim. App. 1999); *see* TEX. R. APP. P. 44.2(b). Erroneously admitted evidence "will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Coble v. State*, 330 S.W.3d 253, 286 (Tex. Crim. App. 2010) (*citing Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); *Houston v. State*, 185 S.W.3d 917, 924 (Tex. App.— Austin 2006, pet. ref'd).

Here, in addition to Navarro's statements objected-to as hearsay, Navarro's cousin said she *saw* that Navarro was afraid. 3 RR 155. Chris Kashimba as testified that he "would see bruises." 3 RR 94. The appellant's friend, Juan H. Darios, testified that at the barbecue that they had together a few days before Navarro's death, the appellant "was definitely not being very nice to her. He had been drinking quite a bit of beer. And I just kind of objected to the way his behavior was towards her, the way he talked to her." 3 RR 62. Sarah Hansen, the convenience store clerk who had sex with the appellant during the time between Navarro's death and the discovery of her body testified that the appellant had a "six-pack of Lone Star tall boys" with three remaining the day she ran into him at the music festival and that he continued to drink and that "could tell that he had alcohol in him" that night. 7 RR 17-18. There

was also additional evidence that Navarro planned to leave the appellant including her willingness to work weekends in East Austin which was incompatible living in Spicewood and taking care of the appellant's son. 3 RR 76. Because "substantially the same evidence," that the appellant complains of: demonstrating the appellant's bad treatment of Navarro after excessive drinking, and her fear of him and plans to leave the relationship was admitted elsewhere without objection, any potential error in admitting the evidence through hearsay was harmless. *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991).

Furthermore in light of the evidence as a whole, the complained-of testimony likely had but a slight effect on the jury. The jury convicted the appellant of murder and tampering with evidence based on a web of powerful

interrelated testimonial and physical evidence including cell phone evidence showing the victim was on her way to the appellant's house when she answered her last call, cell phone evidence that the appellant never once attempted to contact Navarro after her phone went silent, that the appellant's cell phone traveled to the abandoned and remote site where Navarro's body was found in the early morning hours, that the victim was wrapped in a Coleman tent matching an empty bag found in the appellant's home and weighted with paint cans containing the same kind of paint used in the appellant's home, that the appellant was behaving strangely the morning after Navarro was likely killed, that the appellant fled to the Canadian border and attempted to enter there after Navarro's body was discovered and that the appellant was evasive when

his own mother asked him point-blank if he had killed Navarro.

Based on this overwhelming evidence, the court can have fair assurance that the error either had no influence on the jury's deliberations or had but slight effect. *Ladd v. State*, 3 S.W.3d at 566. The appellant's point of error should be overruled.

## State's Reply to the Point of Error Two

The evidence is sufficient to support the appellant's murder conviction as well as his conviction for tampering with evidence.

## Standard of Review

A court reviewing for sufficiency of evidence must determine whether, viewing all the evidence in the light most

favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899, 912 (Tex. Crim. App. 2010).

## Argument and Authorities

The appellant argues that "[n]othing tied him to the tent, rope, or paint cans found with Navarro's body" (Appellant's Brief, No. 03-14-00234-CR at 16-17) and that "there is absolutely no evidence that Appellant caused Navarro's death" (Appellant's Brief, No. 03-14-00235-CR at 17). Because the combined and cumulative force of all the incriminating circumstances points to the appellant's guilt of both offenses, the evidence was sufficient to support both convictions.

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. Jan. 16, 2013), *quoting Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "In reviewing the sufficiency of the evidence, [the court] should look at 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007), *quoting Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the

conviction." *Hooper v. State*, 214 S.W.3d at 13 (internal citations omitted).

Here, a myriad of circumstances all combined to substantiate the appellant's guilt. First, the appellant had a motive to kill Navarro, his own sexual jealousy and fear of being left. The appellant was involved in a love triangle with the Navarro and Chris Kashimba. 3 RR 36-37. 3 RR 99. 6 RR 68. 6 RR 70. The appellant was jealous and controlling toward Navarro. 3 RR 52- 56. 3 RR 155. 3 RR 60-65. 3 RR 158. Navarro had plans to leave the appellant. 3 RR 102. 3 RR 70-76. The appellant was treating Navarro badly just before her death. 3 RR 60-65. "Motive is a significant circumstance indicating guilt." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). *See also, Hacker v. State*, 389 S.W.3d 860, 870-71 (Tex. Crim. App. 2013).

The evidence also showed that the appellant had the opportunity both to kill Navarro and to dispose of her body. In this case, the appellant lived in a "secluded" area in Spicewood, Texas not far from where the victim's body was found. 4 RR 272. 3 RR 38. 5 RR 23. Navarro's last known communication was a call to the appellant that showed her location as being near U.S. Highway 71 and she told Kashimba she was on her way to the appellant's home when they parted. 6 RR 43. 5 RR 124-130. 3 RR 104-105. The appellant's phone was silent for two hours during the time that Navarro was most likely killed (between 8:24 to 10:30 on June 27). 6 RR 43- 47. The day following Navarro's likely death, complaining of illness, the appellant left work around 7 pm, and between 1 am and 2:30 the following morning, the appellant's cell phone data records were consistent with someone driving out to the abandoned location where her

body was left.  4 RR 22-23.  4 RR 26.  6 RR 124.  6 RR 109-119.

The appellant was familiar with the area the body was hidden by virtue of his work as a firefighter with the Pedernales Fire Department.  4 RR 50.  Evidence of opportunity helps link a defendant to wrongful conduct or is supportive of other evidence of such conduct.  *Hacker v. State*, 389 S.W.3d at 871.

In addition, the evidence showed that the appellant had tried to conceal Navarro's death.  Navarro's body was found underwater, wrapped in a Coleman tent.  3 RR 173-177.  3 RR 248.  Her body had been bound with a rope and there was a rope around the victim's neck that was attached to cinder blocks and paint cans that anchored it under the water.  3 RR 202.  3 RR 228. .3 RR 235.  There were sections of Navarro's skin that were "cut out" post-mortem..  4 RR 184.  Attempts to conceal incriminating evidence are also circumstantial evidence of guilt.

*Guevara v. State*, 152 S.W.3d at 50. The appellant's attempts to hide Navarro's body and identity are probative both that he tampered with evidence and also that he killed Navarro.

The appellant seeks to minimize his connection to Navarro's body by citing the physical evidence in the record that was inconclusive while ignoring inculpating evidence that did connect him to the body. Appellant's Brief, No. 03-14-00234-CR at 15-16. For instance, although the appellant claims that "nothing tied him" to the paint cans found with the victim, both the paint cans found with the victim and the paint cans recovered at his house were labeled as having been bought at a Lowe's in Hutto in July of 2010. 3 RR 236. 5 RR 175. The appellant had lived in Hutto before he moved to the house in Spicewood. 7 RR 73. Likewise, testing showed that the cans found with the body contained the same kind of paint found in

the appellant's home.  5 RR 185-188.  Although testing did not exclude other possible sources of paint, to the extent the paint found in the appellant's home could be scientifically compared to the paint found with the victim, the match was as conclusive as possible.  5 RR 188.

Other evidence found with Navarro's body was connected to the appellant as well.  For instance, the appellant had been given specialized training in rope work for his job.  4 RR 51.  4 RR 78-80.  The appellant's home contained ropes with complex knots.  5 RR 45.  *See* 18 RR 10 (State's Exhibit 221.)  There was a rope around the victim that was attached by complex knots to cinder blocks and paint.  3 RR 235.  *See* 11 RR 70.  (State's Exhibit 33.)

Navarro's body was found in an adult size medium t-shirt that said "His Pain, Your Gain."  5 RR 26.  3 RR 244. 3 RR 246-247.  Navarro wore a much smaller size.  5 RR 30.  The

appellant's home contained a number of size adult medium t-shirts with slogans "related to religion, God, things like that." 5 RR 49.

Navarro's body was wrapped inside of a Coleman tent. 5 RR 41. In the second search of the appellant's home, a Coleman tent bag was found without a tent inside it. 5 RR 35-41. A Coleman tent besides the one that was with the victim was not found in the investigation. 5 RR 42. The Coleman tent bag found at the appellant's home had the same product number on it as the Coleman tent the victim was found wrapped in. 5 RR 43. 5 RR 63. At trial, Renee Luna testified about numerous consistencies between a tent that the appellant had used on a camping trip in November of 2010 (shown in a photo) and the tent that was recovered, wrapping the victim. 5 RR 137-145. 5 RR 101-103. *See* 19 RR 13

(State's Exhibit 256.)  In his opinion, the tent that was recovered from the lake was purchased in the bag found in the appellant's home.  5 RR 145.

A black trash bag was found with the body.  3 RR 255. Although there was no basis for determining whether the trash bag found with the victim and the trash bags found in the appellant's home were ever at one time connected, the State's expert testified that the bags could possibly have come from same batch of trash bags.  5 RR 148-154.

The jury was entitled "to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 318-19. Given all of the connections between Navarro's body and the appellant, a rational trier of fact could have found the appellant was the one to conceal her body and weight it

underwater.  *Jackson v. Virginia*, 443 U.S. at 319.  The appellant's elaborate attempts to conceal incriminating evidence were probative of his guilt for murder as well. *Graham v. State*, 566 S.W.2d 941, 951 (Tex. Crim. App. 1978).

The appellant also argues that the State proved nothing more than that the appellant had motive and opportunity to kill Navarro.  Appellant's Brief, No. 03-14-00235-CR at 17.  But, unlike *Stobaugh v. State*, 421 S.W.3d 787, 865 (Tex. App. Fort Worth 2014), cited by the appellant to say that juries cannot convict on "mere speculation," and where there was no body recovered, not only was Navarro's body (with its post-mortem cuts and botched attempt at concealment) an incriminating part of the evidence in this case, there was additional evidence that "wrongful conduct ha[d] occurred."  *Stobaugh v. State*, 421 S.W.3d 787, 865 (Tex. App. Fort Worth 2014)

Navarro's manner death was ruled a homicide. 4 RR 196. 4 RR 213-215. The medical examiner ruled that asphyxia was the cause of Navarro's death. 4 RR 189. Navarro was deprived of oxygen by some involuntary manner and means and she died as a result of that. 4 RR 191. Because Navarro's head and face were decomposing it was difficult to evaluate whether she might have petechia which would have been a factor in assessing strangulation. 4 RR 168. Similarly because of the condition of the body, it wasn't possible to assess the victim's neck for injuries, even though there was a "rope [] tied tight around the neck, attached to two cinder blocks and two paint cans." 4 RR 170-172. The medical examiner testified that in some strangulations the findings are "very subtle." 4 RR 187. The lack of detail about how the asphyxia in this case came about was due to the decomposition of Navarro's body and thus was not exculpatory. Furthermore,

although he was cross examined on the possibility of "sudden arrhythmic death syndrome," the appellant's theory of the case, the medical examiner did not change his findings according to that possibility. 4 RR 215. Navarro was young and healthy at the time of her death. 4 RR 215. Navarro's manner and cause of death were additional "evidence that wrongful conduct has occurred." *Hacker v. State*, 389 S.W.3d at 871.

"Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). After the time that Navarro was most likely killed (between 8:30 and 10:30 on June 27th), the appellant made calls to general and home repair stores that might have materials such as those found with Navarro's body like ropes and paint cans. 6 RR 43-47. The following day, the appellant was acting out-of-

character on the job and made zero attempts to contact

Navarro by phone.  4 RR 18- 67. 6 RR 70.  The day after that,

the appellant headed for the border with Mexico, missing work

to do so.  6 RR 52-54.  4 RR 26-27.  He then lied about why he

missed work, claiming that because "his girlfriend and he had

split up and he didn't want to leave the house fearing that she

was going to demolish -- or just tear up stuff in the house."  4

RR 32-33.  The trash can at the appellant's house contained

pictures of Navarro, along with perfumes, lotions and other

female articles.  4 RR 283-284.  Navarro was never reported

missing.  4 RR 137-138.   The appellant responded

incriminatingly when his mother asked him if he had killed

the victim.[3]  State's Exhibit 318.  Not only did the appellant

---

[3] In a recorded phone call to his mother, recorded after the appellant's
detention after his attempted border crossing, the appellant's mother
directly asks "Joe Derek, did you kill Veronica?" and the appellant responds

travel to the U.S. border with Mexico after Navarro's killing, he also tried to enter Canada following the discovery of Navarro's body. 7 RR 31-45. "[A]factfinder may draw an inference of guilt from the circumstance of flight." *Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007).

The State was required to prove that the appellant intentionally or knowingly caused the death of Veronica Navarro, and, knowing that an investigation of Navarro's death was

---

with an uneasy laugh and says "Uh, Mom. Mom, I'm in the Pembina County Jail. I guess they have a warrant out for my arrest." State's Exhibit 318. She confronts him again, saying "Tell me, did you hurt her, yes, or no?" State's Exhibit 318. Again, the appellant does not respond to the question but tells her the address where he is detained. *Id.* When she insists saying, "I mean, did you?" the appellant changes the subject to his possible release. *Id.* In the same phone call, the appellant's mother admonishes him that he cannot run if she obtains his release and tells him not to speak to anyone. State's Exhibit 318. Later, when the appellant's mother asks him "Did you do anything wrong?," the appellant responds "No, not today." *Id.* She asks "You did not hurt anybody" and he changes the subject, saying "Tell Dad 'Happy Birthday.'" *Id.* Finally, when his mother states pleadingly, "But, you didn't do anything wrong?," the appellant responds with a significant silence until he asks "You still there?" *Id.*

pending, he altered, destroyed, or concealed her corpse with intent to impair its availability as evidence in the investigation. TEX. PENAL CODE § 19.02; TEX. PENAL CODE § 37.09. The cumulative force of all the incriminating circumstances is sufficient to support the conviction on both charges. *Hooper v. State*, 214 S.W.3d at 13. A rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319. *Brooks v. State*, 323 S.W.3d at 912. The appellant's Point of Error Two should be overruled.

## State's Reply to the Point of Error Three

The trial court did not abuse its discretion in excluding evidence concerning Chris Kashimba's past contacts with law enforcement because, as specific instances of conduct that were not prior convictions, they were inadmissible as impeachment evidence. Alternatively, any error in excluding the testimony was harmless.

## Standard of Review

As stated above, a trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Powell v. State*, 63 S.W.3d at 438

## Argument and Authorities

The appellant argues that the court abused its discretion by failing to allow him to cross examine Chris Kashimba by allowing him to ask about three incidents involving law enforcement contact with Kashimba. But the trial court did

not abuse its discretion in excluding evidence concerning Chris Kashimba's past contacts with law enforcement because, as specific instances of conduct that were not prior convictions, they were inadmissible as impeachment evidence.

Rule of Evidence 611 provides that a "witness may be cross-examined on any relevant matter, including credibility." TEX. R. EVID. 611.  However, "Rule 608 limits the ability of a party to introduce evidence regarding the character of a witness." *Martinez v. State*, 17 S.W.3d 677, 688 (Tex. Crim. App. 2000)  '"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.'" *Martinez v. State*, 17 S.W.3d at 688 *quoting* TEX. R. EVID. 608(b).

At trial, the appellant wished to impeach Kashimba relying on three incidents taken from police reports: a domestic disturbance from February 26, 2010, a second domestic disturbance from October 24, 2008 and a theft reported on September 22, 2008. 3 RR 119-121. The State responded that there had been "no report of any physical violence" between the two of them in the reports and that the incidents had not ended in convictions. 3 RR 118-119. After hearing argument from the parties, the court held "I am not going to allow you to impeach him with these specific incidences of conduct that haven't resulted in any convictions at all." 3 RR 123. The court went on to say "However, with respect to -- one thing I will say is with respect to the breakup, because there has been an issue with respect to this relationship, I will allow you to question him about their relationship and whether it was going

on or whether there was breakups at any time or something of that nature." 3 RR 123.

Acknowledging the general rule that specific instances of conduct are inadmissible to impeach a witnesses credibility, the appellant argues that such evidence is nonetheless admissible to "rebut affirmative representations made on direct examination," and that he should have been able to rebut Kashimba's representation on direct examination that he and Navarro "never fought." Appellant's Brief, No. 03-14-00234-CR at 20 and No. 03-14-00235-CR at 21. However, because when Kashimba stated that he and Navarro "never fought" he meant that they never *physically* fought, the specific incidences the appellant sought to admit did not contradict an affirmative misrepresentation.

Kashimba's testimony about whether he and Navarro "fought" came in the context of direct examination by the State on the history of his relationship with Navarro:

> Q. Okay. Now, Chris, I want to turn your attention to May or June of 2011. Were you and Veronica living together in that time period?
> A. Well, if she wasn't living in Marble Falls, then she was living with me.
> Q. Okay. When you guys were together, did you have a fight?
> A. No, ma'am. It might have been a discussion. I mean, we never fought. We never threw things or blew things out of portion. We were civilized people and talked like human beings.
> Q. Okay. I'm sorry, that was the wrong word. Did you-all break up before Veronica's death?
> A. Yes, ma'am, we sure did.  3 RR 96.

In this exchange, Kashimba appears to misinterpret a question from the State, an attempt to ask why he and Navarro had separated, for a question about whether they had ever had a physical confrontation.  Given this context,

Kashimba's denial of having "fought" was a denial of physical violence toward Navarro, not that they had ever had disagreements. Where there is no affirmative misrepresentation, specific instances of conduct not resulting in conviction do not constitute "rebuttal." *See Schoff v. State*, 2010 Tex. App. LEXIS 1350, at *20 (Tex. App.—Austin Feb. 23, 2010, no pet.) (mem. op., not designated for publication). Thus, unless the reports had contained evidence of any physical violence between the Kashimba and Navarro they did not rebut "affirmative misrepresentations" made on direct examination. Furthermore, any potential ambiguity in the meaning of "fought" in the context of the trial was corrected by the latitude the court gave the appellant to ask the witness about "breakups."

Because the evidence appellant wished to offer did constitute specific instances of conduct but were not prior convictions under Rule 609, trial court properly excluded the evidence.

## Harmless Error

Assuming, *arguendo*, that the court abused its discretion in excluding the evidence, the error would be regarded as non-constitutional error. Accordingly, the error will be disregarded if the reviewing court has fair assurance, after considering the record as a whole, that the error did not affect the jury, or had but slight effect. *Bagheri v. State*, 119 S.W.3d 755, 762-63 (Tex. Crim. App. 2003); *see* TEX. R. APP. P. 44.2(b).

To the extent that the police reports impeached Kashimba's statement that he and Navarro "never fought"

because it was evidence that they had disagreements or "fights," that evidence was available to the appellant in other forms in the record, already. The evidence at trial was that Navarro's romance with Kashimba was on-again-off-again. 3 RR 35. Navarro's older sister testified that Navarro and Kashimba "would always argue." 3 RR 43. Kashimba himself described the relationship as "off and on." 3 RR 95. In fact, just following the testimony during which Kashimba said he and Navarro never "fought," Kashimba described a specific incident in which he saw a picture of Navarro taken with the appellant after "she went out clubbing" and that after seeing it he told Navarro "I would like for you to get your things and move out." 3 RR 96-97. Even without the police reports, there was evidence in the record to show that Kashimba and Navarro had disagreements.

Furthermore, the appellant characterizes Kashimba's credibility as important to the case by saying that his testimony was the only evidence that Navarro was planning on leaving the appellant and thus established motive. But there was evidence from other witnesses in the record establishing motive. Navarro interviewed for a job that was inconsistent with living out in Spicewood and taking care of the appellant's son just before she was killed. Also, Navarro's cousins testified about her troubled feelings within the relationship and the fact she had alternately dated both Kashimba and the appellant. Juan Darios testified about the evident unhappiness of the couple just before Navarro's death. Even if the jury discounted Kashimba's testimony, there was ample motive evidence to rely upon from other sources. The error, if any, did

not affect the jury, or had but slight effect.  *Bagheri v. State*, 119 S.W.3d at 762-63.

In conclusion, the appellant's Point of Error Three should be overruled.  The trial court's decision to exclude evidence of specific instances of conduct to impeach Kashimba's credibility was not erroneous, much less "a clear abuse of discretion." Alternatively, if the court erred in excluding the evidence, the error was harmless.

### State's Reply to the Point of Error Four

The trial court did not abuse its discretion in allowing the admission of a phone call from the appellant to his mother recorded while he was in jail because it was properly authenticated by voice identification. Alternatively, any error in admitting the testimony was harmless.

### Standard of Review

As stated above, a trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Powell v. State*, 63 S.W.3d at 438. A trial court's ruling will be upheld so long as its decision to admit or exclude evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d at 391.

## Argument and Authorities

State's Exhibit 318 was admitted over the appellant's objections, including on authentication grounds. 7 RR 88. The appellant now complains that the trial court should not have admitted the phone call between the appellant and his mother that was recorded while he was being held at the Pembina County jail on the basis that it was improperly authenticated. Specifically, the appellant argues that under Texas Rule of Evidence 901, in addition to voice identification, telephone calls must be authenticated "by the number assigned at the time by the telephone company to a particular person or business" and that "none of this evidence" was presented. Appellant's Brief, No. 03-14-00234-CR at 23 and No. 03-14-00235-CR at 24, *citing* TEX. R. EVID. 901(b)(5)&(6). However, since the phone call was properly authenticated by voice

identification, the trial court did not abuse its discretion in admitting State's Exhibit No. 318.

Under Rule 901 of the Texas Rules of Evidence, the requirement of authentication or identification as a condition precedent to admissibility is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). Subsection (b) of that Rule offers a few examples of "evidence that satisfies the requirement." TEX. R. EVID. 901(b). However, "Rule 901(b) makes it clear that the illustrations given therein are just that and are not by way of limitation." *Phillips v. State*, 436 S.W.3d 333, 339-340 (Tex. App.—Waco 2014, pet. granted), *citing* TEX. R. EVID. 901(b). The Rule also does not require that evidence be authenticated by more than one sufficient means. For instance, a telephone conversation can be authenticated using

the number dialed. TEX. R. EVID. 901(b)(6). But, the identification all of the voices on the recording is another proper means of authentication of a phone call. TEX. R. EVID. 901(b)(5); *Phillips v. State*, 436 S.W.3d at 339-340. The Rule does not require that phone calls be authenticated by proof of number dialed, so long as the evidence is sufficient to support a finding that the matter in question is what its proponent claims.

In this case, Detective Leal identified the voices of both the appellant and his mother. 7 RR 75. Chief Osvalt identified the voice of the appellant's cellmate in the background. 7 RR 68. This was sufficient authentication by voice identification to support a finding that the call was what the State claimed. TEX. R. EVID. 901(b)(5); *See Duncan v. State*, 2013 Tex. App. LEXIS 3169, at *14 (Tex. App. —Dallas Mar. 22, 2013, no

pet.)(mem. opinion not designated for publication)(testimony of employee of Sheriff's Department identifying audiotaped recordings of jail phone conversations as well as the voices on each exhibit was sufficient to support admission of the exhibits under Rule 901.) The trial court did not abuse its discretion in admitting State's Exhibit No. 318 over the appellant's authentication objection.

## Harmless Error

Assuming, *arguendo*, that the court erred in allowing the exhibit into evidence, any error was harmless. Error in the admission of evidence is non-constitutional error subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). TEX. R. APP. P. 44.2(b); *Hankins v. State*, 180 S.W.3d 177, 182 (Tex. App.—Austin 2005, pet. ref'd).

As argued, *supra*, in State's Reply to the Point of Error One, the appellant was convicted of both murder and tampering with evidence based on a vast array of interrelated physical and testimonial evidence.  Because the scope of the evidence in this case was so broad and the effect of the evidence cumulative, the appellant's phone call to his mother from jail, as a single part of the detailed whole, did not determine the verdict.  *See Motilla v. State*, 78 S.W.3d 352, 356-57 (Tex. Crim. App. 2002) (overwhelming evidence of guilt is factor to consider in harm analysis.)

In conclusion, the appellant's Point of Error Four should be overruled. The appellant's phone call to his mother from the Pembina County Jail was properly authenticated and should not have been excluded.  Alternatively, if the court erred in permitting it into evidence, the error was harmless.

## State's Reply to the Point of Error Five

The trial court did not abuse its discretion in
admitting State's Exhibit 318, a recorded phone
call from the appellant to his mother from jail,
because the exhibit did not violate the appellant's
right against self-incrimination.   Even if State's
Exhibit 318 was admitted in error, it was
harmless.

## Standard of Review

As stated above, a trial court's decision to admit or

exclude evidence is reviewed for abuse of discretion.  *Powell v.*

*State*, 63 S.W.3d at 438.  A trial court's ruling will be upheld so

long as its decision to admit or exclude evidence is within the

"zone of reasonable disagreement." *Montgomery v. State*, 810

S.W.2d at 391.

## Argument and Authorities

The appellant argues that the appellant's recorded phone call to his mother from Pembina County Jail should not have been admitted because the question "as to whether Appellant killed Navarro clearly invaded his right to remain silent" and "the answer was information only Appellant could supply." Appellant's Brief, No. 03-14-00234-CR at 26 and No. 03-14-00235-CR at 26. But, because this recorded exchange was voluntarily made, out-of-court, and did not involve a State actor, the Fifth Amendment rights the appellant claims pertaining to the conduct of the prosecutor at trial were not implicated. The admission of the phone call as an exhibit did not violate the appellant's right against self-incrimination.

No person shall be compelled in any criminal case to be a witness against himself. U.S. CONST. AMEND. V. Furthermore, "the failure of any defendant to so testify shall not […] be alluded to or commented on by counsel in the cause." TEX. CODE CRIM. PROC. art. 38.08. However, the Fifth Amendment does not "preclude a witness from testifying voluntarily in matters which may incriminate him." *Chapman v. State*, 115 S.W.3d 1, 6 (Tex. Crim. App. 2003), *quoting Minnesota v. Murphy*, 465 U.S. 420, 427-428 (1984).

In his fifth point of error, the appellant erroneously equates State's Exhibit 318 with a prosecutor's comment on a defendant's failure to testify at trial. Appellant's Brief, No. 03-14-00234-CR and No. 03-14-00235-CR, Point of Error Five, *citing Johnson v. State*, 611 S.W.2d 649, 650 (Tex. Crim. App. 1981), *Losada v. State*, 721 S.W.2d 305, 313 (Tex. Crim. App.

1986), and *Angel v. State*, 627 S.W.2d 424, 425 (Tex. Crim. App. 1982). The cases cited in support of this argument all involved allegations that the State improperly commented on appellant's failure to testify at trial. The conversation between the appellant's and his mother, including her question to him if he had killed Navarro and his incriminating responses to that question are not equivalent to a prosecutor's comment on the failure of the defendant to testify at trial. Therefore, the prohibitions the appellant asserts simply do not apply. The appellant's conversation with his own mother was voluntary and unprovoked by the State and was therefore admissible. *See Autry v. State*, 626 S.W.2d 758, 765 (Tex. Crim. App. 1982)(Appellant's telephone call to his mother was shown to be an act of free will and the admissions which were made were

81

within earshot of an officer were not the result of interrogation and were admissible at trial.)

The appellant's Fifth Amendment rights were not violated and his fifth point of error should be overruled.

## Harmless Error

Assuming, *arguendo*, that the court erred in admitting the recording, any error was harmless. *See* Harmless Error analysis in State's Reply to Point of Error Four, above.

In conclusion, the appellant's Point of Error Five should be overruled. The phone conversation was admissible. Alternatively, if the court erred, the error was harmless.

## State's Reply to the Point of Error Six

The trial court did not abuse its discretion in denying the appellant's motion for new trial because the newly-discovered evidence it was based upon merely showed that the appellant and Navarro were together prior to her death, did not contradict the evidence at trial, and would not have brought about a different result at trial..

### Standard of Review

"A trial court's ruling denying a defendant's motion for new trial is reviewed under an abuse of discretion standard." *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001).

### Argument and Authorities

The appellant argues that he should have been granted a new trial because surveillance videotapes from a Walmart store showing the appellant and Navarro shopping together were turned over after the trial and that this evidence refuted

the State's theory that Navarro was afraid of the appellant and planned to leave him. Appellant's Brief, No. 03-14-00234-CR at 27 and No. 03-14-00235-CR at 27. But, because the newly-discovered evidence merely showed that the appellant and Navarro were together prior to her death and thus did not contradict the evidence at trial, the appellant failed to establish all of the essential requirements for a new trial based on newly discovered evidence and the trial court's denial of the motion for new trial was warranted.

When material evidence favorable to the accused has been discovered since trial "[a] defendant is entitled to have his motion for new trial granted if (1) the newly discovered evidence was unknown to him at the time of the trial; (2) his failure to discover the new evidence was not due to the lack of due diligence; (3) the new evidence is admissible and not

merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result." *Delamora v. State*, 128 S.W.3d 344, 354 (Tex. App.—Austin 2004, pet. ref'd), *citing Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002). "A failure by a defendant to establish any of the essential requirements for a new trial based on newly discovered evidence warrants the trial court's denial of the motion." *Delamora v. State*, 128 S.W.3d at 354, *citing Shafer v. State*, 82 S.W.3d 553, 556 (Tex. App.--San Antonio 2002, pet. ref'd).

In this case, it was undisputed that the videos were not turned over until after the trial and that was this was due to no failure of the appellant. 10 RR 22. The State however, argued that the evidence would not have brought about a

different result at trial.  10 RR 22.  After hearing argument, the court held that while it was ""having presided over this case probably two months ago or less," it had "a very good recollection of the case" and that "the cumulative and overwhelming circumstantial evidence of the defendant's guilt certainly would indicate to this Court that that photo would have had no impact on the ultimate outcome of the case."  10 RR 24-25.

As the State argued at the Motion for New Trial, the surveillance evidence simply showed that the appellant and Navarro were still together on June 26, 2011.   10 RR 23.  That was consistent with the evidence at trial showing the same.  6 RR 68.  6 RR 70.  Given that the evidence at trial was consistent with the newly-discovered evidence, not only the appellant fail to establish that the evidence would "probably

bring about a different result," but it the evidence was cumulative as well and thus the trial court certainly did not commit an abuse of discretion in overruling the motion for new trial. *Salazar v. State*, 38 S.W.at 148; *Delamora v. State*, 128 S.W.3d at 354. The appellant's sixth point of error should be overruled.

## Prayer

WHEREFORE, the State requests that the Court overrule all of the appellant's points of error and affirm the judgment of the trial court.

Respectfully submitted,

Rosemary Lehmberg
District Attorney
Travis County

*/s/ Rosa Theofanis*
Rosa Theofanis
Texas Bar No. 24037591
Assistant District Attorney
District Attorney's Office
P.O. Box 1748
Austin, Texas 78767
Phone: 512.854.9400
Fax: 512.854.9206
Email: Rosa.Theofanis@ traviscountytx.gov
AppellateTCDA@ traviscountytx.gov

## Certificate of Compliance

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), effective December 1, 2012, the State certifies that the length of this brief is **12,200** words. The State also certifies, pursuant to Texas Rule of Appellate Procedure 9.4(e), a conventional typeface 14-point was used to print this brief.

*/s/ Rosa Theofanis*
Rosa Theofanis
Assistant District Attorney

## Certificate of Service

This is to certify that the above State's brief has been served on the appellant by U.S. mail, electronic mail, by facsimile, or

electronically through the electronic filing manager to his attorney, Kristen Jernigan, 207 S. Austin Ave, Georgetown, Texas, 78626, <Kristen@txcrimapp.com>; on this 20th day of May, 2015.

/s/ Rosa Theofanis
Rosa Theofanis
Assistant District Attorney